# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**FIRST GUARANTY BANK**                                           **PLAINTIFF**

v.                                                    CAUSE NO. 3:18cv334-LG-RHW

**INDEPENDENT HEALTHCARE**
**MANAGEMENT, INC. d/b/a LACKEY**
**MEMORIAL HOSPITAL**                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [51] Motion for Summary Judgment filed by the plaintiff, First Guaranty Bank ("FGB"). FGB asserts that no material issues of fact preclude finding that, as a matter of law, Defendant Independent Healthcare Management, Inc. d/b/a Lackey Memorial Hospital ("Lackey") breached the Conditional Sales Agreement ("CSA") and owes the unpaid balance of $806,528.56 on the contract. Lackey responds that factual issues over whether the individual who signed on behalf of Lackey had authority to bind it preclude summary judgment. The motion is fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court concludes that no material issues of fact remain as to liability. However, the evidence in the record is inadequate to support a determination on damages. FGB's Motion for Summary Judgment will accordingly be granted in part as to liability and denied insofar as damages are concerned.[1]

---

[1] The Court would also note that FGB's request to enjoin Lackey from continuing to use the software financed by the CSA (as requested in the Amended Complaint), is

I. BACKGROUND

This case is a breach of contract action brought for payments purportedly owed under the CSA. (*See* Mot. Summ. J. Ex. 7, at 10-14, ECF No. 51-7.) The CSA arranged for Med One Capital Funding, LLC ("Med One") to finance Pioneer Health Services, Inc.'s ("Pioneer") purchase of software and related services from McKesson Information Solutions for seven hospitals, one of which was Defendant Lackey. Med One assigned the CSA to Republic Bank, Inc., who later assigned the CSA to Plaintiff FGB via a Portfolio Purchasing Agreement ("PPA"). At the time of the CSA's execution, Pioneer managed Lackey under a management contract. Pioneer owned the other six hospitals.

On March 30, 2016, Pioneer and its hospitals declared bankruptcy. FGB did not file a claim in the Chapter 11 proceeding because it was not given notice of the pending bankruptcy until the day before the deadline for creditors to file a claim. Payments ceased on the CSA, and, on November 23, 2016, FGB sent a written demand for payment of the full balance owed to Lackey. Lackey says in its briefing that this was the first time it became aware of its supposed obligation on the CSA. After Lackey failed to make any payment, FGB filed this lawsuit to recover the amount still owed on the CSA.

In a separate proceeding pending the United States District Court for the District of Utah, FGB is seeking rescission of the PPA by which Republic Bank assigned the CSA to FGB. Lackey previously asked to stay proceedings in this case

---

entirely unaddressed in the parties' briefing on the instant Motion for Summary Judgment.

– 2 –

pending the outcome of that litigation. The Court denied that request, finding that the Utah action had no bearing on the determination of Lackey's liability under the CSA. (Order, ECF No. 59, *aff'd by* Order Denying Mot. for Review of Mag. Order, ECF No. 69.)

Lackey does not dispute that it has failed to make payments on the CSA. Lackey contends, however, that it is not liable on the CSA because Julie Gieger – who purportedly signed the CSA on behalf of Lackey (*see id.* at 14) – did not have actual authority to bind Lackey as a guarantor. Gieger was CFO of both Pioneer and Lackey. "[N]either Lackey['s] internal financials, nor its IRS Form 990 tax returns, both of which were prepared by Ms. Gieger, ever reflected that such a credit extension was executed by Lackey . . . or that such a liability existed as to Lackey . . . ." (Resp. Opp. 2, ECF No. 71.) "Moreover," says Lackey, Lackey "would have never authorized the agreement and put its 501(c)(3) status at risk – a fact that Med One was aware of before the Agreement was executed." (*Id.*)

## II. DISCUSSION

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

– 3 –

574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

  b. <u>Analysis</u>

The parties agree that Mississippi law governs this breach of contract action. As the plaintiff, FGB has the burden to prove, by a preponderance of the evidence, "1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012). This case turns on the first element – whether a valid and binding contract exists between FGB and Lackey. Forming a valid contract requires "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual

assent, and (6) no legal prohibition precluding contract formation." *NC Leasing, LLC v. Junker*, 172 So. 3d 155, 160 (Miss. 2015) (citation omitted).

Lackey maintains that issues of fact surrounding the legal capacity of Julie Gieger to contract on Lackey's behalf preclude summary judgment. FGB seems to concede that material issues of fact persist over Gieger's actual authority to bind Lackey to the CSA.[2] However, FGB argues that uncontested record evidence establishes Gieger's apparent authority to contract on Lackey's behalf, regardless.

Under Mississippi law, "'[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have.'" *Newsome v. Peoples Bancshares*, 269 So. 3d 19, 29 (Miss. 2018) (quoting *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994)).

> Mississippi law imposes a three-prong test for determining if apparent authority exists:

---

[2] Actual authority, also termed express or direct authority, is the authority *actually conferred* by the principal. *See McFarland v. Entergy Miss., Inc.*, 919 So.2d 894, 902 (Miss. 2005). The Court has stated: "An express agent is one who is in fact authorized by the principal to act on their behalf." *Id.* (internal quotation omitted). . . . The Restatement states that actual authority arises as "reasonably understood by the agent." Restatement (Third) of Agency § 3.01 (2006). The Restatement further provides that a manifestation by the principal must occur. *Id.* A manifestation is defined as expressive conduct. Restatement (Third) Of Agency § 3.01 cmt. b (2006). Specifically, "[a] principal's unexpressed willingness that another act as agent does not create actual authority." *Id.*
*Newsome v. Peoples Bancshares*, 269 So. 3d 19, 28 (Miss. 2018).

– 5 –

> (1) acts or conduct by the principal indicating the agent's
> authority; (2) reasonable reliance by a third party upon
> those acts or conduct; and (3) detrimental change in
> position by the third party as a result of such reliance.

*Id.* at 29-30 (citations omitted). Whether an individual holds apparent authority to act on behalf of another is a question of fact. *Id.* at 30; *Alexander v. Tri-Cty. Co-op. (AAL)*, 609 So. 2d 401, 404 (Miss. 1992).

Initially, Lackey argues that because the existence of apparent authority is a fact issue, summary judgment can never be granted on the issue. The Court disagrees. "[T]he issue of one's apparent authority to act for another is a factual one, and when a motion for summary judgment is made, the court does not decide questions of fact, but merely determines if there are such factual questions to be decided at trial on the merits." *Tri-Cty. Co-op.*, 609 So. 2d at 404. Unresolved issues of fact may frequently preclude summary judgment on apparent authority. *See, e.g., id.*; *Newsome*, 269 So. 3d at 30-31; *Nasakaitis Motorsports Mgmt., LLC v. Rockstar, Inc.*, No. 1:10CV125HSO-JMR, 2011 WL 2446612, at *4 (S.D. Miss. June 15, 2011). But if no factual questions remain for trial, summary judgment is appropriate. *See* Fed. R. Civ. P. 56. As will be explained, no material issues of fact remain on the question of liability in this case.

FGB identifies ample evidence demonstrating acts by Lackey indicating Gieger's authority, FGB's reasonable reliance (which, in this case, is Med One's reasonable reliance attributed to FGB by assignment of the CSA) upon those acts, and that FGB relied on those acts to its detriment. On January 25, 2012, Joseph McNulty, III – the Chairman of Lackey's Board of Directors and the CEO of Pioneer

– 6 –

– signed an Incumbency Certificate as a witness to Gieger's signature. By signing the Incumbency Certificate, both McNulty and Gieger certified to Med One that Gieger was authorized to execute an earlier, nearly identical conditional sales agreement and future related documents on behalf of Lackey, Pioneer, and the other six hospitals). (Mot. Summ. J. Ex. 3, at 53, ECF No. 51-3 (ECF pagination).) Gieger then proceeded to sign that conditional sales agreement the same day (*see id.* at 49-52), before signing the CSA that is the subject of this lawsuit on April 18, 2012. (Mot. Summ. J. Ex. 7, at 14, ECF No. 51-7.) Med One financed the sale of software to Lackey because McNulty assured Med One that Gieger had the authority to bind Lackey as a guarantor to the CSA.

Lackey offers several arguments in an attempt to create issues of fact surrounding the reasonableness of FGB's reliance upon Lackey's acts. First, Lackey asserts that Med One should have known Gieger did not have authority to obligate Lackey on the CSA because, in the negotiations between Med One and Pioneer, Pioneer sought (but ultimately forewent) a separate agreement for Lackey because it was a non-profit entity. Lackey contends that Med One was accordingly "aware that Lackey . . . could not execute the [CSA] as a guarantor as doing so could adversely affect its non-profit tax status." (Resp. Opp. 4, ECF No. 71.) Lackey offers no legal support, however, for this contention that Lackey's non-profit status was threatened by obligating debt on the CSA. Even if true, its unclear why a potentially negative outcome for Lackey would render it legally incapable of signing the CSA (such that it would have been unreasonable for Med One to rely on

McNulty and Gieger's representations). By Lackey's own admission, the undisputed factual record demonstrates that Pioneer ultimately agreed to have a single contract that included Lackey along with the other hospitals. (*See* Mot. Summ. J. Ex. 3, at 9, ECF No. 51-3 (ECF pagination).)

Second, Lackey contends that Med One did not – but should have – sought resolutions or minutes from Lackey's Board of Directors showing a grant of authority to someone to execute the CSA. Again, this does not undercut the reasonableness of relying upon the representations made in the Incumbency Certificate. Lackey does not cite to any legal authority requiring the presentation of an explicit delegation by a board of directors to make reliance reasonable, especially where the chairman of the board has acted to confirm the CFO's authority. Moreover, Lackey does not present evidence suggesting that the Board of Directors would have disclaimed Gieger's authority to bind Lackey.

Third, Lackey argues that it was unreasonable for Med One to rely upon the Incumbency Certificate for Gieger's authority to execute the CSA because it was signed four months prior and in anticipation of the earlier January 25, 2012 conditional sales agreement – not the CSA. This contention ignores the plain language of the Incumbency Certificate, which certifies that its included representations apply to all future related contracts. The CSA was undoubtedly a related contract.

Essentially, Lackey's response to the record evidence is that it is possible to envision a more thorough investigation into Gieger's authority than the one

– 8 –

conducted by Med One. That may be so, but the fact that Med One could have done more does not create a factual issue surrounding the adequacy of what Med One relied upon. No record evidence even demonstrates that a deeper, more thorough investigation would have demonstrated Gieger lacked authority to sign on Lackey's behalf. Lackey's current CEO, Sidney Sawyer, testified at Lackey's Rule 30(b)(6) deposition that he did not know whether Gieger had authority to bind Lackey to the CSA. (Mot. Summ. J. Ex. 5, at 4, ECF No. 51-5 (ECF pagination).) His stated lack of knowledge was the closest any deposed individual came to denying that Gieger was so authorized.[3]

Finally, Lackey asserts that Med One advancing funds to Pioneer for the purchase of software for Lackey "cannot be sufficient" to establish detrimental reliance. (Resp. Opp. 6, ECF No. 71.) Rather, says Lackey, "In order to prove that element, . . . FGB would need to present evidence that Med One would not have advanced the funds to Pioneer but for Ms. Gieger's willingness to sign the Agreement on behalf of Lackey Hospital." (*Id.*) The issue is not whether Med One would have advanced any funds to Pioneer without Lackey's guarantee of Pioneer's obligations on the CSA, but whether Med One would have advanced funds intended to cover Lackey's purchase and licensed use of the software. Buddy Yates – who held the title of Controller at Pioneer in 2012 and was the lead negotiator on the CSA for Pioneer, Lackey, and the other six hospitals – testified that Med One was

---

[3] Sawyer signed Lackey's Response to FGB's Interrogatories (completed three months before his deposition), however, in which Lackey repeatedly states that Gieger was not authorized to sign the CSA for Lackey. (Mot. Summ. J. Ex. 8, at 3, ECF No. 51-8.)

– 9 –

not going to separately fund Lackey's purchase of electronic medical records software from McKesson, and that Med One required Lackey to sign on to the CSA in order to finance its inclusion. (*See* Mot. Summ J. Ex. 3, at 8-9, 17-18, ECF No. 51-3 (ECF pagination).) This is sufficient to establish Med One's detrimental change in position based on Lackey's representation that Gieger had authority to sign the CSA on its behalf.

The representations made by Lackey's CFO and Chairman, in signing the Incumbency Certificate, constituted acts by Lackey. The undisputed record evidence demonstrates that it was reasonable for Med One to rely on those representations. It is difficult to imagine an individual in a better position to act on behalf of Lackey than the Chairman of Lackey's Board of Directors. Moreover, it is entirely reasonable to rely on a representation that the CFO – the corporate officer in charge of financial analysis, projections, and planning – has authority to obligate Lackey in an agreement financing the purchase of software for the hospital. And Gieger signed another conditional sales agreement before again signing the subject CSA. Med One then relied to its detriment on McNulty and Gieger's representations of Gieger's authority by financing Pioneer's purchase of software for Lackey.

III. CONCLUSION

"Mississippi caselaw provides: '[T]he principal is bound *if the conduct of the principal* is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have

– 10 –

the power he assumes to have.'" *Newsome*, 269 So. 3d at 30 (emphasis in original) (quoting *Steen v. Andrews*, 78 So.2d 881, 883 (Miss. 1955)). The evidence presented by FGB establishes all three elements for Gieger's apparent authority to bind Lackey to the CSA. Lackey fails to create an issue of fact surrounding any of those elements.

The Court has not been presented with adequate evidence of the unpaid balance owed on the CSA to determine damages. The demand letter attached to the Amended Complaint states a balance of $709,722.00 plus $80,000.00 in attorneys' fees (Am. Compl. Ex. B, at 2, ECF No. 9-2), while FGB's Memorandum in Support (Mem. Supp. Mot. Summ. J. 15, ECF No. 52) of the instant Motion states that the amount owed as of January 26, 2019 was $806,528.56. Neither figure is supported by an accounting of payments made against an initial sum or the sworn statement of someone in a position to make that calculation. Therefore, although summary judgment is warranted on the issue of Lackey's liability for breach of the CSA, questions of fact persist regarding damages.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [51] Motion for Summary Judgment filed by the plaintiff, First Guaranty Bank is **GRANTED IN PART** and **DENIED IN PART**. The Court finds Defendant Independent Healthcare Management, Inc. d/b/a Lackey Memorial Hospital in default of the Conditional Sales Agreement. The Motion is accordingly **granted** on the issue of liability for breach of contract. The Motion is **denied** to the extent that it seeks a determination of damages owed on the CSA.

**SO ORDERED AND ADJUDGED** this the 25th day of October, 2019.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE